**Burnetta P. HIGHT, Appellant,**

v.

**Clifton E. TUCKER, Appellee.**

**No. 97–FM–1156.**

District of Columbia Court of Appeals.

Argued Jan. 6, 2000.

Decided Aug. 17, 2000.

Sheila Kaplan, Assistant Corporation Counsel, with whom John M. Ferren, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellant.

Neil S. Hyman, Washington, DC, for appellee. David E. Fox was on the brief for appellee.

Before TERRY and STEADMAN, Associate Judges, and KERN, Senior Judge.

TERRY, Associate Judge.

This is an appeal from the denial of a motion to review a child support order. Appellant[1] argues that the trial court erred in (1) not following the statutory child support guidelines in determining the amount of support to be paid, (2) refusing to consider the father's overtime wages in calculating his gross income, (3) failing to issue written findings in support of its order, and (4) refusing to order retroactive support payments. Appellee argues that the court acted properly in all respects. We reverse.

## I

Appellee, Clifton Tucker, is the father of Tiffany Tucker, who was born on October 18, 1977. Mr. Tucker and Tiffany's mother, Gloria Hight, were not married. Gloria Hight died when Tiffany was in her early teens, and thereafter Tiffany resided with her aunt, Burnetta Hight. On November 22, 1996, when Tiffany was nineteen years old, Burnetta Hight filed a petition in the Superior Court to establish Mr. Tucker's paternity and to require him to provide support for his daughter, who was then attending college. On November 26 Mr. Tucker consented to an adjudication of paternity, and on that same day a hearing on the issue of child support was held before a trial court hearing commissioner.

At the hearing there was a dispute over the amount of Mr. Tucker's income. Mr. Tucker was employed by the District of Columbia Department of Public Works. His actual income from that job for the previous year, including overtime, was $56,233, but his base salary was only $35,-588. Counsel for Ms. Hight argued that the higher figure should be used to calculate the amount of child support, but the hearing commissioner rejected appellant's argument and ruled that his computations would be based on Mr. Tucker's base salary of $35,588.

Then, when asked by the commissioner why the court should not require him to pay child support, Mr. Tucker replied, "I have a terminally ill wife with cancer," and said that "for the last six, seven years, I've been having a lot of bills" and that "my money [has] been running very low." Mr. Tucker also claimed that he had been paying his daughter's college tuition. However, when Ms. Hight's counsel asked that Tiffany herself be allowed to testify about whether or not her father was actually helping to pay for her education, the commissioner refused to hear her. At one point during the discussion of college tuition, an unidentified person in the courtroom said, "But you didn't pay all of that, because I paid half of it and I asked you to pay the other half." Mr. Tucker replied that he had paid the tuition for the first semester, quoting a figure, but the unidentified person said, "You did not pay all that. I paid half of that." Counsel for Ms. Hight then requested permission to question Mr. Tucker "concerning his wife's disability." The hearing commissioner, however, did not allow such questioning, saying, "I think that's rather personal."

The commissioner then ruled that Mr. Tucker should pay $661.00 monthly in accordance with the low child support guideline.[2] He did not allow any evidence to be presented about Mr. Tucker's wife, her illness, or any expenses related to her illness. The commissioner ruled further that because of his wife's illness, Tucker should pay only $500.00 now, and that the amount would be increased to $661.00, the low guideline amount, after one year. He also rejected counsel's argument that Mr.

1. Appellant Hight is represented by the Corporation Counsel pursuant to D.C.Code § 16-2341(a) (1997).

2. The high guideline amount for appellee's salary was $839.00, and the middle guideline amount was $750.00. *See* D.C.Code § 16-916.1(m).

Tucker should pay retroactive child support "[b]ecause this person [Ms. Hight] is not legally responsible for the child."

After Ms. Hight sought review of the commissioner's decision under D.C.Code § 11–1732(k) (1995), a hearing was held before a Superior Court judge. At the end of that hearing, the judge affirmed the order of the commissioner. The judge ruled that the commissioner had correctly used appellee's base salary to compute child support because it "would have been speculative to include overtime." The judge also held that the commissioner had erred in delaying full payment of Mr. Tucker's child support obligation because of his wife's illness, and that the commissioner had properly denied the request for retroactive support "because the petitioner [Ms. Hight] was not legally responsible for supporting the child."

## II

### A. *Departures from the Guidelines*

■ The Child Support Guidelines, found at D.C.Code § 16–916.1 (1997), generally govern child support awards in the District of Columbia. There is a statutory presumption that the guidelines will apply, absent a showing that "application of the guidelines would be unjust or inappropriate in the circumstances of the particular case." D.C.Code § 16–916.1 (*l*). As the statute enumerates, there are several "factors that may be considered to overcome the presumption," one of which is that "[t]he noncustodial parent needs a temporary period of reduced child support payment to permit the repayment of a debt or rearrangement of his or her financial obligations...." D.C.Code § 16–916.1 (*l*)(5). If such a showing is made, "a temporary reduction may be included in a child support order," provided certain conditions outlined in the statute are met. *Id.*

■ In this case, the hearing commissioner evidently found this section of the statute applicable to Mr. Tucker and thus reduced his child support payment to an amount below the minimum required by the guidelines. At the hearing, Mr. Tucker testified that his wife was ill with cancer and that he had incurred expenses in relation to her illness. Critically, however, he presented no documentation to this effect, nor did he even state the total amount of those expenses or give any description of how they impaired his ability to meet his child support obligation. The commissioner, surprisingly, did not allow any such testimony, even when requested by Ms. Hight's counsel, on the ground that it was "rather personal." This was clear error.

The commissioner also departed from the Child Support Guidelines in allowing Mr. Tucker to pay less than the lowest amount prescribed by the guidelines for a period of one year. There is nothing in the record to show what factors the commissioner used in determining that the application of the guidelines may have been "unjust or inappropriate," nor was there any attempt made by Mr. Tucker to justify such an amount under any other part of D.C.Code § 16–916.1 (*l*). Aside from the fact that his wife was seriously ill, Mr. Tucker never presented any evidence about her illness or, more importantly, about the expenses he had incurred as a result of that illness. He cannot rely simply on the fact that his wife is ill; rather, he must present specific data on his income and expenses before he can receive a reduction in his child support payments. Because he did not do this, there was insufficient evidentiary support for the reduction of the child support payment to less than the minimum required by the guidelines, and the commissioner erred in granting that reduction.

■ Furthermore, at the hearing Mr. Tucker testified that he was contributing money to help pay for his daughter's college tuition. Someone in the courtroom, not identified in the record (but most likely

his daughter [3]), exclaimed that this was only partially true, but the commissioner did not allow any further testimony on this issue. On this record, it is obvious that the tuition matter needed to be explored further. The commissioner plainly abused his discretion in failing to take testimony and make findings as to the exact amount of tuition paid by Mr. Tucker and whether his payments represented all or only a part of the tuition actually due and owing.

The most serious departure from the guidelines was the commissioner's refusal to include Mr. Tucker's overtime wages in the calculation of his gross annual income, contrary to the express command of the statute. D.C.Code § 16–916.1(c)(1) defines the term "gross income" as "salary or wages, *including overtime*, tips, or income from self-employment" (emphasis added). The commissioner plainly erred in refusing to take Mr. Tucker's overtime wages into account. When Ms. Hight's counsel reminded the commissioner that "gross salary ... includes all income, even overtime," the commissioner replied, "No, no. The job he was hired to perform, how much was his pay a year?" The reviewing trial judge likewise erred in sustaining the commissioner's ruling on the ground that the amount of overtime was too "speculative." There was evidence that Mr. Tucker's total income in the previous year had been $56,233, more than $20,000 above his base salary of $35,588. Even though the next year's overtime probably could not be determined with precision, the statute clearly required that overtime be included in the calculation of gross income; at the very least, the commissioner should have made a rough estimate, based on concrete evidence (pay slips from the prior year, for example), of what Mr. Tucker's future overtime earnings might be. Mr. Tucker, in turn, would then have had to justify the exclusion of his overtime payments from the total amount of his earnings. Simply

to call the calculation of overtime wages "speculative," as the reviewing judge did, was legal error.

### B. *The Lack of Findings*

D.C.Code § 16–916.1 (*l* ) states that "[d]epartures [from the guidelines] shall be set forth and explained in writing." In this case, neither the commissioner nor the reviewing judge issued written findings, or any other explanation in writing, when requiring Mr. Tucker to pay less than the low child support guideline amount for a period of one year.

Although a written explanation is required by statute whenever a court deviates from the Child Support Guidelines, the lack of written findings may not require reversal in every case. It may be, for example, that a transcript of the proceeding could suffice, provided that adequate oral findings are included in the transcript. Alternatively, a remand with directions to supplement the record may be appropriate in a particular case. We need not rule definitively on this issue in this case because we are reversing the support order on other grounds. We assume and expect, however, that in future cases there will be written findings, in some form or another, sufficient to comply with the statutory requirement.

### C. *Retroactive Child Support*

Finally, Mr. Tucker argues that retroactive child support was not allowable in this case. Controlling case law says otherwise. We have said, first of all, that "[c]hild support is a right which belongs to the child." *Burnette v. Void,* 509 A.2d 606, 608 (D.C.1986) (citations omitted). We have also held that once paternity is established, as it was in this case (indeed, it was conceded), an award of child support may, and usually should, be made retroactive to the birth of the child. *J.A.W. v. D.M.E.,* 591 A.2d 844, 847–848 (D.C.1991). "[A]

---

**3.** Counsel had earlier told the commissioner that the daughter was present in the court-

room.

finding of paternity necessarily includes a finding that the child is entitled to support from the now-identified father as well as the mother." *Id.* at 848. If the father can show why he should be excused from the duty to support his child, he must do so; otherwise "the court should generally order that child support payments be made retroactive to the child's birth." *Id.* In this case the child's aunt, Burnetta Hight, was merely seeking reimbursement for her own expenses in caring for Tiffany, and only from the date on which she took over Tiffany's care after her mother died. Because child support may be granted retroactively to the date of birth of the child, this request was both allowable and appropriate, and the commissioner erred in ruling otherwise.

When the trial court affirmed the commissioner's ruling on retroactive child support, it stated that it was doing so because Ms. Hight "was not legally responsible for supporting the child," echoing a similar remark by the commissioner. But whether or not Ms. Hight was legally responsible for the child is beside the point. The right to child support is the right of the child; the legal status of her caretaker has no impact on that right. *J.A.W.*, 591 A.2d at 848; *Burnette*, 509 A.2d at 608; *see also Maschauer v. Downs*, 53 App.D.C. 142, 145, 289 F. 540, 543 (1923) (when father "refuses or neglects to perform his duty" of support, he may be held liable to anyone who provides his children with "necessaries"). What this record shows is that Ms. Hight spent money out of her own pocket to support her niece, Tiffany, after Tiffany's mother died. Because that support should have come from Tiffany's father, Ms. Hight is entitled to reimbursement from him upon a proper showing of the sums that she reasonably spent. *See J.A.W.*, 591 A.2d at 849.

### III

We hold that the hearing commissioner erred in several respects, and that the trial court similarly erred in affirming the com-missioner's ruling. The order from which this appeal is taken is therefore reversed, and this case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*