**Tedrose BERAKI, Appellant,**

v.

**Yodit ZERABRUKE, Appellee.**

**Nos. 06–FM–1556, 07–FM–745, 07–FM–906.**

District of Columbia Court of Appeals.

Argued Nov. 17, 2009.

Decided Sept. 16, 2010.

---

442

R. Michael LaBelle, Washington, DC, for appellant.

Timothy C. Brightbill, Washington, DC, for appellee.

Before RUIZ and THOMPSON, Associate Judges, and FERREN, Senior Judge.

THOMPSON, Associate Judge:

This appeal relates to an ongoing dispute between appellant Tedrose Beraki and his estranged wife, appellee Yodit Zerabruke, relating to custody of their two minor children (both daughters, one born in 1997 and the other born in 1999). After a hearing, the Family Court issued a Memorandum and Order dated August 18, 2006 (the "August 2006 Order") awarding Beraki sole legal custody of the children and directing that the parties "share joint physical custody with visitation to the Mother." More specifically, the court directed the parties to meet with Dr. David Missar, a psychologist, "to develop a plan for the re-introduction of [Zerabruke] into the lives of the children at a therapeutically appropriate pace ... to commence expeditiously" and further requiring that, "within the succeeding six months," the parties and the children meet with Dr. Missar "to facilitate the therapeutic visitation." In a subsequent ruling, the court ordered Zerabruke to pay child support, both going forward and retroactive to December 2006. Thereafter, the court denied Beraki's motion for reconsideration of that ruling.

Beraki appealed from both the physical custody/therapeutic visitation order and from the child support order. As to the first, he argues primarily that the court issued its order without finding that contact with Zerabruke was in the children's current best interests. Regarding the child support order, Beraki argues that the court erred in awarding only three months of "retroactive" child support and also based its ruling on an inappropriate factor.

We conclude that, in the wake of the Superior Court's post-August 2006 rulings in this ongoing matter, particularly the court's April 21, 2010 order ("the April 2010 Order"), Beraki's challenge to the August 2006 order is moot. We therefore decline to address, and we dismiss, the portion of Beraki's appeal that relates to physical custody and therapeutic visitation. As to child support, we affirm the judgment of the Family Court.

I.

Beraki testified at the custody hearing that the children told him in December 2003 that they had been physically and sexually abused by Zerabruke and her co-worker (whom Beraki identifies as Zerabruke's boyfriend).[1] The court also heard testimony from the children's therapists (who deemed the children's allegations to be credible) and from Dr. Missar that, irrespective of whether the claimed sexual abuse had actually occurred, the children believed that it had occurred and did not want to have contact with Zerabruke.

Noting that CFSA and the U.S. Attorney's Office had determined not to prosecute the claims of abuse, and crediting the testimony by Zerabruke and her co-worker that there had been no abuse, the court concluded in its August 2006 Order that the allegations of sexual abuse were "un-

---

1. Because of Beraki's report of that claimed abuse, the children were removed from Zerabruke's custody and placed in Beraki's sole physical custody pending investigations by the District of Columbia Child & Family Services Agency ("CFSA"), the Metropolitan Police Department, and the United States Attorney's Office.

supported by the evidence." However, because of the testimony that the children strongly believed that their mother had abused them, and because the court found that Beraki was contributing to the children's feelings of hostility toward their mother and "negatively influenc[ing]" the children with regard to her, the court found that "a precipitous return" of the children to Zerabruke's physical custody would be "contrary to their best interests." The court found that it would be detrimental to the children even to have visitation with Zerabruke "outside of a controlled, therapeutic setting," but also found that the children would suffer "[i]n the long run . . . if they continue[d] to harbor . . . exclusively negative feelings toward" Zerabruke. The court found it "incumbent . . . to fashion a custody and visitation order which will allow the children to be reunited to their mother in a therapeutic setting as a precursor to a relationship which will hopefully grow thereafter . . . ."

After Beraki had filed his appeal from the August 2006 Order, the Family Court issued a series of subsequent orders that led appellee Zerabruke to argue that the appeal was moot. In an October 11, 2007 ruling, for example, the court ordered that the schedule for the children's first face-to-face meeting with their mother be suspended in light of "significant evidence [that had] been proffered" that the scheduled meeting "may endanger the . . . children." And, in a September 2, 2009 order—entered a full three years after entry of the August 2006 order that required expeditious planning for the re-introduction of Zerabruke into the children's lives and a meeting between the parents and children and Dr. Missar "within the succeeding six months"—the Family Court

noted that the children still had not seen or been re-introduced to Zerabruke. The court found that it was in the best interests of the children to have a new therapeutic team and ordered that the children "shall begin joint [therapeutic] sessions with Ms. Zerabruke" "[w]hen the Therapeutic Team determines it is appropriate," that "the therapeutic reconciliation protocol outlined [in the September 2009 Order] may be changed or modified as the Therapeutic Team determines is therapeutically necessary"; that the Therapeutic Team "shall move forward with the reconciliation process as . . . in the best interests of the children"; and that "the best interests of the children shall remain the paramount consideration during each phase of the therapeutic reconciliation process." [2] In her Brief of Appellee, Zerabruke urged us to hold that the appeal is moot because, by "suspend[ing] visitation after hearing new evidence from the parties and finding that visits were not yet in the children's best interests" and by having explicitly tied forward movement in the reconciliation process to the best interests of the children, the Family Court through its post-August 2006 orders "ha[d] already done" what Beraki is asking this court to order. Beraki replied that the appeal was not moot because the court was continuing to "work[ ] to complete its Order of August 2006" and continued to consider its August 2006 Order the "fundamental law of the case."

We need not determine whether the October 2007 order or the September 2009 orders alone rendered the appeal moot because we find that these orders plus an even later order—the April 2010 Order—do moot the custody/therapeutic visitation issues in Beraki's appeal. On December 9, 2009, the court heard testimony from Dr.

**2.** After it issued the September 2009 order, the court entered a series of additional orders, pertaining to facilitation of the therapeutic reconciliation process, that made successive adjustments in the terms of the process.

Ruth Zitner, the head of the therapeutic reconciliation team, about the progress of the reconciliation process. Dr. Zitner testified that the children are "remarkably strong" and able to handle the reconciliation process, but had been dismissive of the reconciliation team's efforts and refused to participate actively in the process. She further reported that the children had had an opportunity to experience Zerabruke "not as the 'monster' as she had been portrayed" and she opined that the therapeutic reconciliation process would not harm the children. But Dr. Zitner also had come to the view that the process would not benefit the children or their relationship with their mother. Specifically crediting Dr. Zitner's testimony and relying on her opinion, the court concluded in its April 2010 Order that "the reconciliation process cannot, at this time, go any further due to the minor children's refusal to participate and [Beraki's] continued [and "vindictive"] undermining of any progress actually made during the reconciliation sessions." The court found that there had been a "substantial and material change in circumstances" since August 2006 and found that it "is currently not in the children's best interest" for Beraki and Zerabruke to share physical custody and not in the children's best interest "to have

any of their legal or physical custody vested in their Mother at this time." In addition, although directing an end to the therapeutic visitation process, the court found that "it is in the children's long-term best interest to resume periodic" supervised visitation with Zerabruke. Therefore, the court granted sole physical and legal custody of the children to Beraki, with visitation to Zerabruke for two hours once a month at the court's Supervised Visitation Center, beginning on May 1, 2010. Beraki has filed a separate appeal from the court's April 2010 Order (which is not before us here).

In light of the April 2010 order, we directed the parties to file supplemental briefs on the issue of mootness. Beraki's supplemental brief acknowledges that the April 2010 Order renders moot his appeal of the August 2006 joint physical custody award. He argues, however, that this appeal is not moot because, in · the April 2010 custody order, the court generally "incorporate[d] by reference the findings of fact and conclusions of law made in the August 2006 order."[3] The short answer to this argument is that, as an appellate court, we review judgments, not findings. See *Williams v. United States*, 156

---

**3.** Zerabruke likewise now urges us to rule on "whether the trial court abused its discretion in arriving at the findings of fact and conclusions of law contained in the [August 2006] Order" and to determine whether those findings were "proper." She argues that the appeal from the August 2006 Order is not moot, contending that "the findings of fact and conclusions of law from the Order remain critically important, and the underlying issues of the 2006 order remain live . . . because [appellant] has steadfastly refused to recognize or cooperate with [the 2006] order." And she contends that because of Beraki's "unyielding resistance to the [Family Court's] 2006 order," this court should rule on the August 2006 Order to show him that his "continued resistance to the [c]ourt do[es]

not have any support in law." This amounts to an argument that we should retain the appeal and evaluate the August 2006 Order in case the Family Court should again order joint physical custody and/or therapeutic reconciliation and Beraki should refuse to cooperate. We do not issue such advisory opinions. *Cf. Cropp v. Williams*, 841 A.2d 328, 330 (D.C.2004) (per curiam) (rejecting argument that this court should issue an advisory opinion to "forestall[ ] hypothetical future clashes between" the parties). Moreover, Zerabruke offers no convincing reason why the April 2010 Order does not moot Beraki's appeal of the August 2006 Order even though (as she previously argued) the October 2007 and September 2009 orders rendered the appeal moot.

F.3d 86, 90 (1st Cir.1998) ("[I]t is an abecedarian rule that ... appellate courts review decisions, judgments, orders, and decrees—not opinions, factual findings, reasoning, or explanations."). To the extent that the August 2006 findings are incorporated by reference as the basis for the April 2010 order, Beraki will have an opportunity to obtain review of those findings via the appeal he has taken from that order.

■ Beraki additionally argues that the instant appeal is not moot because the "core rationale" for the April 2010 ruling is that the August 2006 "mandate ... remain[s] in place," a "mandate" that Beraki describes as "the ... conclusion that the children should have regular contact with the person whom they believe sexually abused them." We reject this argument as well, because the focus of the instant appeal has never been the issue of contact *vel non* with Zerabruke, but Beraki's claim that the court ordered an expeditious therapeutic reconciliation process without a finding that contact with Zerabruke (when it eventually occurred) would be in the children's current best interest.[4] This claim, repeated throughout Beraki's briefs,

no longer presents a live issue because (1) the court's post-August 2006 orders evince that the court has frequently revisited and re-assessed the terms of its order with respect to contact between Zerabruke and the children; and (2) the April 2010 Order rests on the court's acceptance of Dr. Zitner's testimony that the children are strong and able to handle meetings with Zerabruke and that visitation with her will not harm them—which we take as a finding that visitation is consistent with the children's current best interest[5]—as well as on the court's finding that visitation is in the children's long-term best interest. Thus, an order from this court awarding the relief that Beraki hoped to obtain—an instruction that the Family Court may not require contact between the children and Zerabruke without a contemporaneous finding that contact is consistent with the children's current best interest—is unnecessary; the Family Court has already made such a finding. *See Smith v. Wells Fargo*, 991 A.2d 20, 25 (D.C.2010) (explaining that if, while an appeal is pending, an event occurs that "renders relief impossible or unnecessary," the appeal is rendered moot) (quoting *Thorn v. Walker*, 912 A.2d 1192, 1195 (D.C.2006)); *Settlemire v.*

---

**4.** *See, e.g.,* Appellant's Opening Br. at 1 (arguing that the court "did not make such contact contingent on the court finding that such contact was in the best interest of the children"); *id.* at 28 (arguing that the court did not "hold that any future contact between the mother and the children would be contingent on the court re-assessing the children's best interest contemporaneously with such contact"); *id.* at 33–34 (complaining that "[t]he court provided no mechanism for re-assessing the children's best interest but nevertheless ordered that they have contact with their mother in the future even though it found that at the time of trial and Order that such contact would be contrary to the best interest of the children"); *id.* at 35 (repeating that "the court has [o]rdered ... contact with [Zerabruke] commence in the future without setting as a contingent requirement that the

court re-visit this decision ... based on evidence concerning the best interests of the children that is contemporaneous"); Appellant's Supplemental Br. at 4 (repeating the complaint about the August 2006 Order "that visitation should occur ... without a finding that it is in the children's current interests to have contact with their mother").

**5.** We note that Beraki asserted in his opening brief that a determination that contact with Zerabruke was in the "best interest of the children" would require a finding that "it would not be harmful to the children to see their mother." As Zerabruke argues, this court does not require any "magic" words for a "best interests of the child" finding. *See, e.g., In re L.L.,* 653 A.2d 873, 880 n. 11 (D.C. 1995).

*District of Columbia Office of Emp. Appeals,* 898 A.2d 902, 904–05 (D.C.2006) (noting that a case is moot when the issues presented by the parties are "no longer 'live' ").[6]

For the foregoing reasons, we conclude that the appeal from the August 2006 custody order is moot.

## II.

■ In a Motion for Temporary Child Support filed on December 11, 2006, Beraki sought an order requiring Zerabruke to pay child support for the period beginning December 18, 2003 (when the children were removed from Zerabruke's home and placed with Beraki, who since that date has had sole custody).[7] On February 16, 2007, the court entered a temporary order of child support requiring Zerabruke to pay child support of $841 per month beginning on March 1, 2007, and subsequently, in a final order dated June 11, 2007, ordered Zerabruke to pay child

support of $842 per month retroactive to December 1, 2006. The court explained that December 2006 was when "the parties came into compliance with [the court's] final order of August 18, 2006, wherein the Court ordered that the mother be reintroduced into the lives of the children expeditiously."[8] Beraki argues that the trial court erred when it awarded child support only as of that date, rather than retroactive support going back to December 2003.[9] In addition, he argues that the court erred in relying on the premise that the child support award "should be neither a financial windfall nor an undue hardship to any parent."

■ "The trial court has broad discretion in making child support decisions," *Lasche v. Levin,* 977 A.2d 361, 365 (D.C. 2009), and we review a child support order for abuse of discretion. *Slaughter v. Slaughter,* 867 A.2d 976, 977 (D.C.2005) (citing *Weiner v. Weiner,* 605 A.2d 18, 20 (D.C.1992)). In an effort to show that the

6. Nor do we discern that this is a case in which we need to rule to provide guidance on an important issue likely to recur but to evade review. *See In re M.N.T.,* 776 A.2d 1201, 1203 n. 2 (D.C.2001) (noting that "particularly in the juvenile context," this court's decisions "have been generous in applying the exception to mootness for issues that are 'capable of repetition yet evading review,'" and explaining that we may review an "overarching issue important to the resolution of a ... class of future cases ... notwithstanding the lack of effect" on appellant).

7. Zerabruke asserts that it is "unclear if [Beraki] ever actually petitioned for child support." Beraki, by contrast, asserts that the issue of child support was pending by July 2005, when he filed a Complaint for Divorce (which the court consolidated with the custody proceeding).

8. The record reveals that December 11, 2006, was the date when, complying with an order of the court issued on November 29, 2006, Beraki attended a meeting with Zerabruke

and Dr. Missar (thereby belatedly complying with the directive in the August 2006 Order that "[w]ithin 45 days of this Order, the parties shall meet jointly with Dr. Missar").

9. We agree with Beraki that his claim was not rendered moot by the court's December 14, 2009 order that modified Zerabruke's child support obligation beginning with August 2008 because of her reduced income. (The December 2009 order set a new monthly child support amount of $50, but reduced Zerabruke's payment obligation to $0 per month until elimination of the overage she paid after August 6, 2008, the date she filed her motion to modify her child support obligation). The issue of whether the court abused its discretion in not holding Zerabruke liable for additional child support for the period from December 2003 through November 2006, as Beraki claims, affects whether there is in fact any overage that must reduce Zerabruke's current $50 per month obligation. For this (and possibly other) reason(s), the child support issue that Beraki raised in his opening brief remains live.

court abused its discretion, Beraki relies on our cases pertaining to the child support obligations of parents who evaded child support obligations in past periods, in which we have concluded that an award of child support "usually should[ ] be made retroactive to the birth of the child." *Hight v. Tucker*, 757 A.2d 756, 760–61 (D.C.2000); *see also, e.g., J.A.W. v. D.M.E.*, 591 A.2d 844, 848–49 (D.C.1991); *W.M. v. D.S.C.*, 591 A.2d 837, 843 (D.C. 1991). However, the presumption discussed in those cases does not apply in the situation presented here, where appellant is requesting retroactive support in conjunction with a custody dispute between parents who shared custody (and child care expenses) during a portion of the children's lives, and where there has been no finding (and there is no obvious basis for a finding) that the non-custodial parent has sought to evade responsibility for the children. Rather, as Beraki asserts in his motion for temporary child support, this case is governed by the more general District of Columbia Child Support Guidelines, which "set forth an equitable approach to child support." D.C.Code § 16–916.01(c)(1) (Supp. 2010); D.C.Code § 16–916.01(b)(1) (2001).[10]

■ The Child Support Guideline Revision Amendment Act of 2006 ("the Act") "went into effect on April 1, 2007, ... [and] in general impose[s] a twenty-four

month limitation on the award of retroactive child support." *Lasche*, 977 A.2d at 366. While the court resolved Beraki's motion for temporary child support before the effective date of the Act, the court did not enter the final child support order that is in dispute here until June 11, 2007, i.e., after the effective date of the Act.[11] Beraki does not dispute that the child support award that is before us is governed by the Act, which establishes a presumption against the three-year retroactive award that he seeks. And, even if *arguendo* that statutory presumption does not apply, the record makes clear that the court in its discretion believed that no retroactive award was appropriate.[12] We discern no legal error in the court's reasoning.

Both the Act and our pre-Act case law establish that the determination of whether to award retroactive child support is left to the discretion of the trial judge. *See* D.C.Code § 16–916.01(v)(1) (Supp. 2010) ("When a case is brought to establish child support, the judicial officer *may* award retroactive child support for a period not to exceed 24 months preceding the filing of the petition or request for child support.") (emphasis added); *In re J.D.C.*, 594 A.2d 70, 75 (D.C.1991) ("[T]he word 'may' ... is quintessentially permissive."); *J.A.W.*, 591 A.2d at 848–49 (remanding case for the trial court to exercise its discretion regard-

---

10. *See also* D.C.Code § 16–916.01(a) (Supp. 2010) ("In any case that involves the establishment of child support ..., if the judicial officer finds that there is an existing duty of child support, the judicial officer shall ... enter a judgment in accordance with the child support guideline ... established in this section."); D.C.Code § 16–916.01(a) (2001) ("In any case [relating to divorce] that involves the establishment ... of child support ..., if the judicial officer finds that there is an existing duty of child support, the judicial officer shall ... enter a judgment in accordance with the child support guideline ... established in this section").

11. *See Lasche*, 977 A.2d at 366 (applying "Child Support Guideline in effect at the time this matter came before the trial court for a final hearing").

12. The court did refer to the final award as "retroactive," in the sense that it covered the (three-month) period before the temporary award, but the final award was not "retroactive" as the term is used in the Act, because the court set the award to commence in the month when Beraki filed his motion for child support.

ing whether to order the father to pay retroactive child support). Here, the court clearly understood that it had discretion, as it stated explicitly that it would "exercise its discretion" and require payment of child support commencing December 1, 2006. *See Johnson v. United States,* 398 A.2d 354, 363 (D.C.1979) (explaining that a component of an appellate court's review for abuse of discretion is a consideration of whether "the trial court recognize[d] that it had ... discretion," and whether "if it did, ... the trial court purport[ed] to exercise [discretion]," and noting that "[f]ailure to exercise choice in a situation calling for choice is an abuse of discretion").

The additional consideration is whether "the record reveal[s] sufficient facts upon which the trial court's determination was based." *Id.* at 364 ("An informed choice ... requires that the trial court's determination be based upon and drawn from a firm factual foundation" and that "a trial court's action is an abuse of discretion if no valid reason is given or can be discerned for it, ... [or] if the stated reasons do not rest upon a specific factual predicate."). In this case, in determining the amount of the child support award and the commencement date, the court considered the incomes of the parties (Beraki's annual gross income of $20,000 excluding tips and Zerabruke's estimated annual gross income of $35,000), the parties' dispute about the amount of Beraki's income from tips, the difficulty in calculating Zerabruke's precise expected income in 2007 because of her multiple jobs, the children's extraordinary medical expenses, and the parties'

obligation to share the costs of therapeutic reintroduction of the children to Zerabruke. The court also considered the "charges of bad faith, perjury, and intransigence" that the parties made in connection with litigation of the child support issue (and found "no merit in any of them"). These all were appropriate considerations, and we perceive no dissonance between them and the award that the court made.[13]

We also can find no abuse of discretion in the court's limitation of the term of the award to prevent "financial windfall or undue hardship." That objective is consistent with the public policy, reflected in the Act, that child support awards not be "inequitable or create an extraordinary hardship" (and with the Child Support Guideline Commission's recognition that these considerations could properly lead a court to order "no retroactive support at all").[14] Nor can we say that the court abused its discretion by tying the child support payment commencement date to the date when, by beginning to cooperate with the therapeutic reunification process that the court ordered in August 2006, Beraki permitted initiation of the process by which (it was then expected that) Zerabruke would be able to move toward reconciliation with the children and thus resume her role as parent.

For the foregoing reasons, we dismiss the appeal as moot insofar as it seeks review of the August 2006 custody order, but affirm the judgment of the court with

---

13. The Act explicitly permits the court to base the retroactivity of the award in part on whether "the parent with a legal duty to pay support has acted in bad faith." D.C.Code § 16–916.01(v)(1).

14. Report of the District of Columbia Child Support Guideline Commission, Final Recommendations 27 (July 2004). Also, as we stated in *Lasche,* "[t]he Final Recommendations of the Child Support Guideline Commission note that unlimited retroactive support often results in uncollectible arrears, especially for low-income parents." 977 A.2d at 367 (citation and internal quotation marks omitted).

respect to the June 2007 award of child support.

*So ordered.*