**Ernest P. LASCHÉ, Appellant,**

v.

**Pamela Beth LEVIN, Appellee.**

No. 09–FM–1576.

District of Columbia Court of Appeals.

Submitted Nov. 2, 2010.

Decided Aug. 18, 2011.

this court, after she obtained the ruling of the ALJ that substantially reduced her repayment

Gary A. Stein, Rockville, MD, was on the brief for appellant.

burden.

Kristin Henrikson, Bethesda, MD, and Delaney McKinney were on the brief for appellee.

Before FISHER, Associate Judge, and WAGNER and KERN, Senior Judges.

WAGNER, Senior Judge:

This is an appeal from an order entered by the trial court after this court remanded the case in *Lasché v. Levin*, 977 A.2d 361 (D.C.2009) (*Lasché I*). In *Lasché I*, appellant argued that the trial court erred in calculating his retroactive child support payments under our presumptive Child Support Guidelines statute (Guideline)[1] by including certain lump sum trust distributions as gross income in the calculation. This court agreed and held that non-periodic trust distributions are not "gross income" under our Guideline statute. *Lasché I*, 977 A.2d at 364. However, we also held that such a distribution is an appropriate factor for consideration as a deviation from the Guideline as set forth in our statute,[2] and remanded the case for recalculation of the retroactive child support obligation. *Id.* at 371–72. This appeal concerns the proper application of the principles set forth in *Lasché I*. We conclude that the trial court abused its discretion in reaffirming its prior decision including the entirety of the trust distributions as gross income in calculating retroactive child support and reverse and remand for further proceedings consistent with this opinion.

## I.

The factual background of the parties' dispute is set forth in detail in *Lasché I* and need not be repeated here. In this appeal, appellant, Ernest Lasché, argues that the trial court abused its discretion on remand by including in his gross income for purposes of calculating child support the entirety of two non-periodic lump sum trust distributions from his deceased parents' estates. He contends that a departure from the Guideline amount was not warranted factually nor justified in writing as required by D.C.Code § 16–916.01(p) (2009 Supp.). Appellee, Pamela Levin, argues that the trial court's decision is consistent with this court's opinion in *Lasché I*, given evidence of appellant's use of the trust distributions. She contends that imputing income to appellant based upon the trust distributions is not a departure from the Guideline and that, in any event, the trial court adequately set forth the basis for its decision. A brief review of this court's opinion in *Lasché I* will facilitate an understanding of the issues raised by the parties and their disposition.

### A. *Lasché I*

In *Lasché I*, appellant challenged, *inter alia*, the inclusion of two lump-sum trust distributions in calculating his retroactive child support payments under the presumptive Child Support Guideline (D.C.Code § 16–916.01) (Guideline). *Lasché I*, 977 A.2d at 364, 369. These one-time distributions in the amounts of $159,601 and $56,815 were made respectively from *inter vivos* trusts of appellant's father and mother upon termination at each of their deaths. *Id.* at 369 & 369 n. 10. Agreeing with appellant's argument, this court held "that the non-periodic trust distributions should not have been included in his 'gross income' under the Guideline and remanded for recalculation of the retroactive child support figure." *Id.* at 364. In reaching this conclusion in this

---

**1.** D.C.Code § 16–916.01 (2006 Supp.).

**2.** *See* D.C.Code § 16–916.01(O) (2009 Supp.) *formerly* D.C.Code § 16–916.01(*l*) (2006 Supp.).

case of first impression in this jurisdiction, this court examined the statutory scheme of the Guideline and similar provisions from other jurisdictions. Noting particularly the distinction between the treatment of principal or capital and income in several Guideline provisions, we concluded that "the overall structure of the examples of gross income in the statute appears to exclude transactions involving shifts in and movements of capital as opposed to income." *Id.* at 370. While holding that non-periodic distributions from trusts are not in themselves gross income within the meaning of the statute, we recognized that the changed financial state of the parent receiving such distributions is an appropriate factor that may be taken into account in applying the Guideline. *Id.* at 371. In that connection, we noted that "trial courts have discretion to deviate from the Guideline and imputed income from the distribution is a relevant factor if the parent chooses to deal with the distribution other than as an investment vehicle." *Id.* (citation omitted). Given the limited record, this court remanded the case to the trial court for determination of how the trust distributions should be treated based upon the facts of the case. *Id.* at 372.

### B. *Decision on Remand*

Upon remand, the trial court reaffirmed its initial order and again counted as gross income the entirety of the trust distributions for purposes of calculating retroactive child support for the years in which the distributions were made. The trial court explained that "[i]f the parent uses the trust funds to support himself, pay bill[s], or for purposes beneficial to him, the trial court may impute income to the parent for the purpose of child support." The court noted appellant's testimony that

he had used proceeds of the trust to pay for legal and living expenses, a car loan and travel.[3] Although finding no evidence that appellant used the proceeds of the trust to invest in his "flagging" businesses, the trial court did find that "the trust distributions allowed the [appellant] to meet his living expenses while engaging in his business ventures." It is also undisputed that after his second trust distribution, $63,000 remained in appellant's bank account.

### C. *Discussion*

 "We review child support orders for an abuse of discretion, unless the matter involves the application of a legal principle, in which case our review is *de novo*." *Upson v. Wallace,* 3 A.3d 1148, 1157 (D.C. 2010) (citing *Sollars v. Cully,* 904 A.2d 373, 375 (D.C.2006)). Appellant argues that, in light of *Lasché I,* the trial court abused its discretion by including the entirety of the trust distributions as gross income in calculating retroactive child support. Further, he contends that the trial court failed to justify, and the circumstances do not warrant, a deviation from the presumptive Guideline support level. Appellee responds that the trial court's decision on remand follows the rubric established in *Lasché I,* which she contends established a "case-by-case" rule for inclusion or exclusion of the corpus of a trust distribution based upon the recipient's use of the funds. These issues raised by the parties involve a question of the proper application of a legal principle extracted from *Lasché I,* which we review *de novo,* and a question of whether the trial court properly exercised its discretion, which we review for an abuse of discretion. *See id.* We turn first to the legal principle controlling inclusion

---

**3.** Specifically, appellant testified that he used $80,000 for pre-existing debts for tools and living expenses, $10,000 to pay off a car loan

(2002 Mazda), $2,000 for travel to see and care for an aunt, and $15,000 for legal expenses.

or exclusion of the corpus of an inherited trust in calculating income under the Guideline.

Contrary to appellee's position, in *Lasché I* this court did not establish a "case-by-case" rule for the inclusion or exclusion of a trust corpus in gross income under our Guideline. Rather, we made clear that the non-periodic distribution of the corpus of a trust is not gross income for purposes of determining child support payments under our statutory Guideline scheme. *Lasché I, supra,* 977 A.2d at 370–71. Examining cases from other jurisdictions, we observed that "[t]hose jurisdictions that have concluded that inheritances constitute income are working under a statutory scheme with a much broader definition of income." *Id.* at 371 n. 14 (citations omitted). We noted that this jurisdiction's Guideline includes only the "[i]ncome from a trust" and "[r]egular income from an interest in an estate, directly or through a trust" as "gross income." D.C.Code § 16–916.01(d)(1)(O), (T) (2009 Supp.) *formerly* D.C.Code § 16–916.01(c)(15), (21) (2006 Supp.). We recognized, however, the parent's changed financial status as a result of such a distribution is an appropriate factor to be taken into account in determining child support. *Id.* at 371. Consistent with this jurisdiction's Guideline scheme, this court took the approach of

treating distributions of this type as a deviation from the Guideline.[4] *Id.* at 371–72. As noted in *Lasché I,* "both the former Guideline and the amended Guideline permit judicial discretion in deviation from the Child Support Guideline generally." *Id.* at 367 n. 7 (citing D.C.Code § 16–916.01(O) (2009 Supp.) *formerly* D.C.Code § 16–916.01(*l*) (2006 Supp.)). By statute, the court is required to justify deviations from the Guideline in writing. *See* D.C.Code § 16–916.01(O) (providing that departures from application of the presumptive Guideline "shall be justified in writing").

Appellee argues that even if the imputation of income to appellant based upon the trust represents a departure from the Guideline, the trial court adequately explained the reason for its decision. This court has stated that "[a]lthough a written explanation is required by statute whenever a court deviates from the Child Support Guidelines, the lack of written findings may not require reversal in every case." *Hight v. Tucker,* 757 A.2d 756, 760 (D.C.2000) (suggesting that adequate oral findings appearing in the transcript of the proceedings may suffice). Since *Hight* was reversed on other grounds, we declined to rule definitively on whether written findings are always required and cautioned that in future cases written findings sufficient to comply

---

**4.** There are several approaches to the treatment of corpus distributions from trusts or inheritances under guidelines in different states. The following reference to this split of authority among the jurisdictions as set forth in *Croak v. Bergeron,* 67 Mass.App.Ct. 750, 856 N.E.2d 900, 905 n. 12 (2006), is illuminating:

"In some jurisdictions, the entire amount of the inheritance is included as gross income for purposes of determining child support. Other states, however, have held that only the interest generated by the inheritance constitutes gross income. A third ap-

proach, adopted in New York, is to treat inheritances as a factor in deviating from the basic child support obligation and awarding additional child support [citations omitted]." *Cody v. Evans–Cody,* 291 A.D.2d 27, 30–31, 735 N.Y.S.2d 181 (2001).... At least one jurisdiction has adopted a hybrid approach, treating only that portion of an inheritance that a parent withdrew and spent as gross income, and the remainder of the inheritance as an interest-generating asset. *In re A.M.D.,* 78 P.3d 741, 743, 746 (Colo.2003).

with the statutory requirement are expected. *Id.* Here, the trial court entered a two-page written order on remand providing an explanation for its decision reaffirming its initial conclusion that the entirety of the two trust distributions should be included as "gross income" for purposes of calculating appellant's retroactive child support obligation. Therefore, we examine the order to determine whether the reasons provided reasonably and adequately support the decision reached. Our review of the application of the legal principles involved is *de novo*, while our review of the child support decision generally is for an abuse of discretion. *Upson, supra,* 3 A.3d at 1157 (citing *Sollars v. Cully,* 904 A.2d 373, 375 (D.C.2006)).

▆▆▆ The trial court acknowledged the holding of this court in *Lasché I* that non-periodic distributions from a trust fund are not gross income under this jurisdiction's Guideline scheme. *See Lasché I, supra,* 977 A.2d at 372. It then stated that it was affirming its prior decision including all of the trust distributions as gross income in the child support calculation as a deviation from the Guideline. In *Lasché I,* this court held that the trial court retains discretion to deviate from the Guideline and that "imputed income from the distribution is a relevant factor if the parent chooses to deal with the distribution other than as an investment vehicle." *Id.* (citing *Croak, supra* note 4, 856 N.E.2d at 906). "The trial court retains that discretion in part because '[a] parent cannot insulate an inheritance from consideration for child support by transforming it into a non-income producing asset.'" *Lasché I, supra,* 977 A.2d

at 372 (quoting *Cody, supra* note 4, 291 A.D.2d 27, 735 N.Y.S.2d at 185). Where a parent does so, it may be reasonable to impute income to all or a portion of an inheritance where there is an adequate foundation for doing so. *See, e.g., Connell v. Connell,* 313 N.J.Super. 426, 712 A.2d 1266, 1270 (1998);[5] *see also Gainey v. Gainey,* 89 Wash.App. 269, 948 P.2d 865, 869 (1997) (holding that "the corpus of an inheritance is not included in a parent's gross income, but that the interest generated by an inheritance is.") If appellant had invested the funds, the income generated would have been included as income under our Guideline. *See* D.C.Code § 16–916.01(d)(1)(F) (2009 Supp.) (describing gross income as including interest or dividends for purposes of the presumptive guideline amount). Thus, it may be fair and reasonable to impute income to assets that generate no income solely because the owner has used it in a way that generates no income or even dissipated it. Such an approach would be consistent with our Guideline. *See id.* That is not what occurred on remand. Indeed, there is no indication that the trial court considered the capacity of the inherited amount to generate income as an option.

Here, the trial court stated that it was including all of the distributions of trust corpus as gross income in the retroactive child support calculation because appellant used the funds to pay his credit card debts and his living expenses while engaging in his business ventures. The court made no distinction in treatment between the funds that appellant had expended and the approximately 30% that remained at the time

---

5. In *Connell,* a post-judgment request for modification of child support due to reduced employment income, a father argued that his inheritance should not be considered because it was invested in a non-income producing residence. *Connell, supra,* 712 A.2d at 1268.

The court affirmed the decision to consider the potential for the inheritance to generate income, but remanded the case because, *inter alia,* the record provided an insufficient basis for use of an 8% interest rate in calculating the amount of imputed income. *Id.* at 1270.

of the hearing. At least that sum had the potential for remaining an interest bearing asset.[6] While apparently accepting that a parent's investment of inherited funds in a business would preserve their status as exempt from gross income in applying the Guideline, the court provided no reason for treating differently appellant's use of the funds for living expenses while pursuing two business ventures. The latter course similarly represents an investment that would have enured to the benefit of the child if the businesses had been successful. Given these circumstances, the trial court's approach amounted to the automatic inclusion in gross income of sums excluded by statute from the calculation based solely upon the determination of the manner in which appellant used most of the funds.[7] Contrary to the trial court's assertion, this approach is not consistent with this court's decision in *Lasché I*.

■ Under the principles enunciated in *Lasché I*, trust funds otherwise excluded as gross income under the Guideline may be considered as a factor in deviating from the Guideline consistent with our statute. *See Lasché I, supra*, 977 A.2d at 370–71. Under our Guideline statute, the judicial officer may depart from the presumptive application of the Guideline if "its application would be unjust or inappropriate under the circumstances of the particular case." The statute enumerates several factors that may be considered to over-

come the presumption. *See* D.C.Code § 16–916.01(p)(1)–(11). It also includes a "catch-all" provision of "[a]ny other exceptional circumstances that would yield a patently unfair result." D.C.Code § 16–916.01(p)(12) (2009 Supp.).

In determining to deviate from the Guideline by including the trust distributions as gross income, the trial court did not consider the departure principles enumerated in § 16–916.01(p)(1)–(12). Nor did it rely upon the "exceptional circumstances" provision in that section. It appears to have rested its decision solely upon the fact of the inheritances and the manner in which appellant used the funds. The court did not consider the reasons for the expenditures. It gave no consideration to the possibility that "[t]he use of an inheritance to pay legitimate debts .... might be deemed reasonable, or even a necessity, under certain circumstances." *Connell, supra*, 712 A.2d at 1270. Indeed, one of the departure principles authorizes a temporary reduction in child support payments to permit the repayment of a debt or rearrangement of the parent's financial obligations under certain circumstances. *See* D.C.Code § 16–916.01(p)(5). Since the court did not strictly address consideration of the corpus of the two trusts as a deviation from the Guideline under § 16–916.01(p), none of these factors were considered.[8]

6. *See A.M.D., supra* note 4, 78 P.3d at 746 (treating portion of an inheritance withdrawn by parent as gross income and the remainder as an interest-bearing asset).

7. In *Lasché I, supra*, this court noted that "trial courts have discretion to deviate from the Guideline and imputed income from the distribution is a relevant factor if the parent chooses to deal with the distribution other than as an investment vehicle." 977 A.2d at 371 (citing *Croak, supra* note 4, 856 N.E.2d at 906). The reference is only a factor for consideration consistent with the deviation

provision of our Guideline statute; it was not intended to suggest an automatic rule for inclusion of these sums in gross income. In *Croak*, the court considered the parent's use of an inheritance "during his orchestrated periods of unemployment," in dismissing his motion to modify a child support order. *Croak*, 856 N.E.2d at 906.

8. Some jurisdictions that consider otherwise excluded inheritances as deviations from presumptive child support guidelines have identified an approach that should be helpful in assuring that all applicable factors are fairly

In making child support decisions, the trial court has broad discretion. *Beraki v. Zerabruke,* 4 A.3d 441, 447 (D.C. 2010) (citing *Lasché I,* 977 A.2d at 365). In exercising its discretion, the trial court must consider the relevant factors and provide reasonable support for its conclusions. *See Johnson v. United States,* 398 A.2d 354, 365 (D.C.1979). Even when the trial court recognizes that it has discretion, but declines to exercise it in preference of an automatic rule, it errs. *Id.* at 363 (citations omitted). Here, the trial court did not consider the relevant factors in deviating from the Guideline, essentially opted for an automatic rule, and did not properly apply the legal principle extracted from *Lasché I.* On this record, we are constrained to conclude that the trial court abused its discretion in reaffirming its prior decision including the entirety of appellant's two trusts in calculating retroactive child support and that reversal is required.[9]

For the foregoing reasons, the case is reversed and remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

considered in the analysis. *See, e.g., Connell, supra,* 712 A.2d at 1269–70 (explaining that child support should be calculated first utilizing the parties' gross income as defined in the child support guidelines before undertaking an analysis of statutory factors for deviation); *see also Cody v. Evans–Cody,* 291 A.D.2d 27, 735 N.Y.S.2d 181 (2001) (suggesting first a calculation under the guideline formula before deviating when strict application produces an unjust result). The statutes in these jurisdictions may differ in some ways from our own Guideline statute; however, a similar approach here would assure proper consideration of the presumptive guideline determination and an analysis of the rationale for any departure consistent with our statute.

9. In light of our disposition, we reject summarily appellee's argument that she should be awarded attorney's fees on the grounds that the appeal is frivolous. *See Slater v. Biehl,* 793 A.2d 1268, 1278 (D.C.2002) (citation omitted) (describing an appeal as frivolous when "wholly lacking in substance").